## Mildren & Keating, et al. v. Henderson's Administrator.

(Decided November 27, 1925.)

### Appeal from Estill Circuit Court.

Appeal and Error—Boundaries—Evidence Held to Show Correct Line to be One Claimed by Defendant, and Finding of Jury to Contrary Against the Evidence.—Evidence held to show that correct boundary line between land of parties was one claimed by defendant, and finding of jury to the contrary set aside as flagrantly against the evidence.

MARTIN T. KELLY, ROBERT R. FRIEND and RIDDELL & SHUMATE for appellants.

GRANT E. LILLY for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Plaintiff, as administrator of W. W. Henderson, deceased, filed his ordinary action against Abner Q. Wilson and Mildren and Keating, his lessees, alleging that in his lifetime W. W. Henderson was the owner and in possession of a described tract of land, and that defendants had unlawfully and wrongfully entered thereon during the lifetime of Henderson, and had wrongfully drilled

several oil wells thereon and had extracted therefrom oil of the value of $—, no part of which has ever been paid either to decedent or his personal representative. The prayer was for judgment against defendants for $—, presumably for the value of the oil alleged to have been extracted.

The answer denied that Henderson was the owner of or in possession of the tract of land described in the petition, or any part thereof in so far as the same covers, includes or overlaps any part of a described tract of land set forth in the answer; and they deny that they or either of them had wrongfully entered upon any part of the land described in the petition, or had wrongfully drilled several or any wells thereon, or had extracted therefrom any oil, except that they did enter upon the land described in the answer and drilled wells thereon, and withdrew oil therefrom, and asserted title in themselves to the land so entered and drilled upon.

After a jury trial, and the hearing of much testimony, in addition to the introduction of a number of deeds and patents, as well as several surveys made recently and some made many years in the past, the jury returned a verdict merely finding for the plaintiff. Upon that verdict the court entered a judgment that Henderson was the owner of the four oil wells in contest, and fixing the true location of the boundary line between Henderson and Wilson as claimed by the plaintiff, and awarding the plaintiff a writ of possession. The cause was then transferred to the equity docket, and referred to the master commissioner to hear evidence and ascertain the value of the oil taken from the wells by the defendants.

It will thus be seen that the only issue in the case was whether the narrow strip of land upon which the oil wells were drilled was the land of Wilson or that of Henderson.

Henderson claimed under a deed from Prather dated July, 1890, and the description in his deed is the same as that given in the petition in this action. Prather claimed under James Long by deed dated August, 1869, in which deed there is a very general description which recites that it includes all the interest that Long and his wife had in the lands of Hezekiah Park, deceased, being not only the interest descended to said Long and wife from Hezekiah Park but also the interest of F. M. Park theretofore deeded to said Long. It will thus be seen

that Long claimed not only by descent from Hezekiah Park but by deed from Francis M. Park dated April, 1865, said deed reciting that Francis M. Park conveyed one-sixth undivided interest in the Hezekiah Park land to Long, including the dower interest of Hezekiah Park's widow. So that it will readily be seen that Henderson claimed under the Hezekiah Park title.

Defendant Wilson claimed under a deed from his father, William D. Wilson, and William D. Wilson claimed under a commissioner's deed made to him in an action to settle Abner W. Quinn's estate, and Abner W. Quinn, who was the father-in-law of William D. Wilson and the grandfather of appellant, Abner Q. Wilson, claimed under one or more patents from the Commonwealth of Kentucky.

Not only does the deed under which appellees claim call for the Abner Wilson line, but the deed under which defendants claim calls for the Prather or Henderson line, which is the same as the Hezekiah Park line; so that the problem of the jury was to find what was the correct line between Abner Q. Wilson and W. W. Henderson, which line was the same line as was formerly between W. D. Wilson and Prather, and still further back, the same line that was between Abner W. Quinn and Hezekiah Park.

The only evidence offered by the plaintiffs directly bearing upon the correct original line was that of E. P. Benton, a surveyor of much experience, but who was at the time he testified only a few weeks less than 89 years of age, and it is his statement as to the correct line upon which the verdict of the jury is based. In effect his statement is that a stake in the edge of the road running from Red Lick to Park's Mill is where the line between the parties should begin and run therefrom N. 43 W. 98 poles to an intersection with the lines of the Abner W. Quinn 600-acre survey. Not only is this line so testified to by Benton inconsistent with the Abner W. Quinn survey, but starting from the point he indicates it lacks 24 poles of reaching the Abner W. Quinn line, whereas if begun at the point claimed by appellants running the same course and the distance called for in all the surveys, patents and deeds (N. 43 W. 74 poles) it does reach the Abner W. Quinn 600-acre survey line. Not only so, this same E. P. Benton made a survey and plat of the William D. Wilson tract of land in 1879 or 1880 when he was a comparatively young, vigorous and active man, and not

only his plat made at the time shows his present claim of the correct line is erroneous, but his survey and plat disclose that he reached the point now claimed by appellants as the corner between Quinn and Hezekiah Park, and recites "thence with J. W. Prather's line N. 43 W. 74 poles to the beginning," which is the line now claimed by appellants.

Not only is Benton's testimony thus contradicted by his own survey and plat made many years ago, but two other recent surveys and plats filed in this record bear out his original survey and plat, and show the correct line to be as claimed by appellants. If the line as fixed by memory by Benton is the correct line, the call in his survey for Wilson in 1879, which reads "thence N. 48½ E. 50 poles to stake," would fall exactly 20 poles short, for it is unmistakably shown that from the Spanish oak, the next previous call, it is only 30 poles to the line which he now says is the correct one.

The most convincing thing, however, we find in the record that the line claimed by appellants is the correct one, and that it was recognized even as early as 1855 as the correct line between Hezekiah Park and Abner W. Quinn, is that the calls in the Benton survey of 1879, in so far as they directly affect the location of this line, allowing for the variations, are exactly the same as those in the lines of the 600-acre Abner W. Quinn patent of 1855. The last several calls in that patent are "thence S. 71 E. 106 poles to a maple at 14; thence N. 12 E. 100 poles to a Spanish oak at 15; thence N. 15 E. 50 poles to a Spanish oak at 16; thence N. 47 E. 50 poles to a beech and maple, Asa and Hezekiah Parks' corner at 17; thence with Hezekiah Parks' and said Quinn's line N. 45 W. 200 poles to a beech at 18."

The maple at 14 referred to in the above lines of the Abner W. Quinn 600-acre patent is recognized by all these surveys and maps, and is thoroughly identified.

Now we propose to show that, allowing for the variations, Benton in his survey from that maple followed the lines of the Abner W. Quinn survey, and likewise fixed the correct line between these parties, to-wit: "Thence S. 69½ E. 106 poles to a maple at W; thence N. 13½ E. 100 poles to a Spanish oak; thence N. 16½ E. 50 poles to a Spanish oak; thence N. 48½ E. 50 poles to a stake at Z; thence with J. W. Prather's line N. 43 W. 74 poles to the beginning."

It will be observed that the course N. 43 W. in the last call of Benton's survey, allowing for the variations, is the same as N. 45 W. in the call of the 1855 Abner W. Quinn patent. Not only does that patent refer to that line as the line between Quinn and Hezekiah Park, but Benton refers to that line as "the J. W. Prather line," Prather being the successor in title to Hezekiah Park.

Not only does that old Abner W. Quinn patent fix that as the line between Quinn and Hezekiah Park, but that patent discloses on its face that Hezekiah Park himself was one of the chainmen who made the survey upon which that patent was issued.

Without going into the more recent surveys, which verify the Quinn patent and the subsequent survey of Benton, we deem it necessary only to say further that these things are most convincing that the correct line between these parties is the one claimed by appellants, and that the finding of the jury to the contrary is flagrantly against the evidence.

There are other questions raised and discussed on this appeal, but in the light of our conclusion on the principal question we deem it unnecessary to refer to them; if there should, however, be another trial of this case the parties will be permitted to amend their pleadings and take such other steps as may simplify the issue.

The judgment is reversed with directions to grant appellants a new trial, and for further proceedings consistent herewith.